UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JESUS HERNANDEZ ALONSO,                                         Petitioner,[1]

v.                                                              Civil Action No. 3:25-cv-652-DJH

JEFF TINDALL, Jailer, Oldham County
Detention Center et al.,                                        Respondents.

\* \* \* \* \*

### MEMORANDUM OPINION AND ORDER

Petitioner Jesus Hernandez Alonso, a noncitizen resident of Kentucky, challenges his detention by immigration authorities and seeks a writ of habeas corpus pending removal proceedings. Alonso alleges that his detention without a bond hearing violates the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment. (Docket No. 1) Following initial briefing (D.N. 8; D.N. 10), the Court held a show-cause hearing and permitted the parties to file post-hearing briefs. (D.N. 13) Those briefs have since been filed. (D.N. 15; D.N. 16) After careful consideration, the Court will grant the petition for the reasons explained below.

### I.

Alonso is a native and citizen of Mexico. (D.N. 1, PageID.4 ¶ 18) He has been in the United States for approximately twelve years, having first entered in 2013 at the age of twenty-one and remained in Louisville, Kentucky, since that time. (*Id.* ¶¶ 18–19) Alonso has a son who is six years old and a U.S. citizen; Alonso "has been the primary caregiver and [has] maintained

---

[1] Petitioner's last name has been corrected from "Alsonso" to "Alonso" based on the clarification in his supplemental briefing. (*See* Docket No. 13; D.N. 16, PageID.85)

residential custody since the child was 8 months old."[2]  (*Id.*, PageID.1 ¶ 2)  He "did not encounter

any immigration officials" when he entered the United States in 2013, and he has not applied for

any legal status.  (*Id.*, PageID.4 ¶ 19)  On March 29, 2025, Alonso was arrested for driving under

the influence of alcohol (DUI), speeding, and not possessing a license or insurance.  (*See* D.N. 8-

1, PageID.43–44)  On August 6, 2025, he pleaded guilty to DUI and was sentenced to thirty days

in jail.  (*See id.*, PageID.44)  U.S. Immigration and Customs Enforcement (ICE) officials arrested

Alonso the same day.  (D.N. 1, PageID.4 ¶ 20)

Alonso was charged with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as an "alien

present in the United States without being admitted or paroled, or who arrived in the United States

at any time or place other than as designated by the Attorney General," and under

§ 1182(a)(7)(A)(i)(I) as an immigrant who is "not in possession of a valid unexpired immigrant

visa . . . or other valid entry document."[3]  (D.N. 8-1, PageID.51)  Removal proceedings were

initiated against him on August 14, 2025 (D.N. 1, PageID.4 ¶ 21), and his attorney submitted a

motion for bond redetermination to the immigration judge on September 16, 2025 (*id.* ¶ 23).  The

immigration judge held a custody and bond redetermination hearing the following day and

concluded that Alonso was ineligible for bond.  (*Id.*, PageID.4–5 ¶ 24)  The immigration judge

determined that he "lack[ed] authority to hear bond requests or to grant bond to aliens who are

present in the United States without admission" due to the "plain language" of 8 U.S.C.

§ 1225(b)(2)(A).  (D.N. 1-1, PageID.18 (citing *In re Yajure Hurtado*, 29 I&N Dec. 216 (BIA

---

[2] The petition also states that Alonso has a daughter.  (D.N. 1, PageID.1 ¶ 2)  This is presumably
an error because the petition says that Alonso "has one child, a six-year-old U.S. citizen."  (*Id.*;
*see also id.*, PageID.4 ¶ 18)
[3] The government form refers to § 212 of the Immigration and Nationality Act, which is codified
at 8 U.S.C. § 1182.  *See Kilic v. Barr*, 965 F.3d 469, 472 (6th Cir. 2020).  The Court uses United
States Code citations in this Order.

2025)))[4]  He "cited no other reasons for his determination."  (D.N. 1, PageID.5 ¶ 24; *see also*

D.N. 1-1, PageID.18)  Alonso has remained detained since that time at Oldham County Detention

Center.  (D.N. 1, PageID.3, 5 ¶¶ 13, 25)  He seeks a writ of habeas corpus against Oldham County

Jailer Jeff Tindall, Chicago ICE Field Office Director Russell Holt, and U.S. Attorney General

Pamela Bondi.  (*Id.*, PageID.3–4 ¶¶ 14–16)  Respondents maintain that (1) the Court lacks

jurisdiction to hear the habeas petition, (2) Alonso should be required to exhaust administrative

remedies, (3) Alonso is lawfully detained under § 1225 and not § 1226, and (4) his detention does

not violate due process.  (*See* D.N. 8, PageID.37–40; D.N. 15, PageID.77–80)

## II.

### A.    Jurisdiction

"A district court may grant a writ of habeas corpus to any person who demonstrates he is

in custody in violation of the Constitution or laws of the United States."  *Maldonado v. Olson*,

No. 25-cv-3142 (SRN/SGE), 2025 WL 2374411, at *4 (D. Minn. Aug. 15, 2025) (citing 28 U.S.C.

§ 2241(c)(3)); *see also Rasul v. Bush*, 542 U.S. 466, 483–84 (2004); *Zadvydas v. Davis*, 533 U.S.

678, 687 (2001) ("We note . . . that the primary federal habeas corpus statute, 28 U.S.C. § 2241,

confers jurisdiction upon the federal courts to hear these cases." (citing § 2241(c)(3))).  Although

the Court "may not review discretionary decisions made by immigration authorities, it may review

immigration-related detentions to determine if they comport with the demands of the

Constitution."  *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 901 (D. Minn. 2020) (citing *Zadvydas*,

533 U.S. at 688).

---

[4] The Board of Immigration Appeals (BIA) concluded in *In re Yajure Hurtado* that noncitizens
who "surreptitiously cross into the United States" without admission or inspection are applicants
for admission under § 1225(b)(2)(A).  29 I&N Dec. at 228.  The Board also concluded that
immigration judges lack authority to hear bond requests of such noncitizens detained under
§ 1225(b)(2)(A).  *Id.* at 229.

Respondents primarily contend that the Court lacks jurisdiction under 8 U.S.C. § 1252(g).[5]

(D.N. 8, PageID.37; D.N. 15, PageID.77–78)  That subsection states:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).  This jurisdictional bar is "narrow."  *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999).  The provision "applies only to three discrete actions that the Attorney General may take": commencing proceedings, adjudicating cases, and executing removal orders.  *Id.* at 482.

Here, Alonso challenges his "detention during his pending removal proceedings" without a bond hearing.  (D.N. 1, PageID.1)  Respondents argue that the decision to detain Alonso "arose from the commencement of his removal proceedings" via his Notice to Appear and thus falls under § 1252(g).[6]  (D.N. 15, PageID.78; *see also* D.N. 8-1, PageID.48)  But § 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General."  *Jennings*, 583 U.S. at 294 (citing *Reno*, 525 U.S. at 482–83).  A claim of unlawful detention does not arise from the commencement of removal proceedings "within the meaning of

---

[5] Respondents also cite subsections (b)(9), (a)(5), and (a)(2)(B)(ii) in support of their assertion that the Court lacks jurisdiction.  (D.N. 8, PageID.37)  But the Supreme Court has held that § 1252(b)(9) does not prohibit courts from hearing cases challenging whether bond hearings are required in removal proceedings.  *See Jennings v. Rodriguez*, 583 U.S. 281, 292–95 (2018).  And "[t]he Suspension Clause precludes 8 U.S.C. § 1252(a) from stripping the Court of jurisdiction to address a *habeas* petition presenting a constitutional claim."  *Dornveil v. Noem*, No. 4:25-cv-1809, 2025 WL 2720786, at *2 (N.D. Ohio Sep. 24, 2025) (citing *Agarwal v. Lynch*, 610 F. Supp. 3d 990 (E.D. Mich. 2022)); *see also* U.S. Const. art. I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.").

[6] Alonso's Notice to Appear commences removal proceedings but is not a removal order.  *See* 8 U.S.C. § 1229(a); 8 C.F.R. § 1239.1.

§ 1252(g) simply because the claim[] relate[s] to that discretionary, prosecutorial decision." *Ozturk v. Hyde*, 136 F.4th 382, 397 (2d Cir. 2025) (quoting *Kong v. United States*, 62 F.4th 608, 613 (1st Cir. 2023)); *cf. Jennings*, 583 U.S. at 295 n.3 (quoting Thomas, J., concurring in part and concurring in judgment) (rejecting for purposes of § 1252(b)(9) the concurrence's position that "even the narrowest reading of 'arising from' must cover" noncitizens' claims for bond hearings). Respondents' argument to the contrary rests on cases that are inapposite (*see* D.N. 15, PageID.77–78). *See Karki v. Jones*, No. 25-3440, 2025 U.S. App. LEXIS 20660, at *8–9 (6th Cir. Aug. 13, 2025) (noncitizen challenging enforcement of his removal order did "not seek 'core' habeas relief: relief from his detention"); *Alvarez v. ICE*, 818 F.3d 1194, 1205 (11th Cir. 2016) (noncitizen's "removal [was] fully adjudicated, and ICE [had] already released him from custody"); *Hodgson v. United States*, No. SA:13-CV-702, 2014 WL 4161777, at *2 (W.D. Tex. Aug. 19, 2014) (noncitizen already released from detention and subject to an order of deportation); *Tsering v. ICE*, 403 F. App'x 339, 343 (10th Cir. 2010) (noncitizen raising a claim "directly and immediately connected to the execution of his removal order").

"It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Reno*, 525 U.S. at 482. In accordance with the Supreme Court precedent cited above and other relevant caselaw, the Court concludes that § 1252(g) does not bar jurisdiction here and that review of Alonso's claims is appropriate. *See Avila v. Bondi et al.*, No. 25-3741 (JRT/SGE), 2025 WL 2976539, at *4 (D. Minn. Oct. 21, 2025); *Patel v. Tindall*, No. 3:25-cv-373-RGJ, 2025 WL 2823607, at *2 (W.D. Ky. Oct. 3, 2025).

**B.    Exhaustion of Remedies**

Next, Respondents ask the Court to "require Petitioner to exhaust his administrative remedies" because "Congress has provided an administrative hearing and appeal process for noncitizens in removal proceedings." (D.N. 8, PageID.37)  Alonso asks that the Court waive any exhaustion requirements.  (D.N. 10, PageID.62)

Petitioners may exhaust their administrative remedies by appealing an immigration judge's decision to the Board of Immigration Appeals (BIA) before seeking a writ of habeas corpus in federal court.  *See Laguna Espinoza v. Dir. of Detroit Field Off.*, No. 4:25-cv-02107, 2025 WL 2878173, at *2 (N.D. Ohio Oct. 9, 2025).  Alonso did not appeal his decision (D.N. 1, PageID.14 ¶ 51), and the deadline to appeal has passed (D.N. 1-1, PageID.19).  The authorities Respondents cite do not require exhaustion, however.  (*See* D.N. 8, PageID.37)  8 U.S.C. § 1229a involves initiation of removal proceedings, not review of detention or bond.  And 8 C.F.R. § 236.1(d)(3) states that "[a]n appeal relating to bond and custody determinations *may* be filed to the Board of Immigration Appeals" under certain circumstances (emphasis added).  8 C.F.R. § 1003.1(a)(5) and (h)(1) address the BIA's power, not a petitioner's, to review and refer the Board's decisions.  Finally, 8 U.S.C. § 1103(g)(2) concerns the Attorney General's powers under that section.

In short, no rule or statute requiring exhaustion appears to be applicable here.  *See Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sep. 9, 2025).  Nor is there any guidance from the Sixth Circuit as to whether administrative exhaustion should be required in this context.  *See id.*  The Court may thus use its "sound judicial discretion" in deciding whether to require exhaustion.  *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013) (citation omitted).  District courts in the Sixth Circuit have applied the three-factor test set out in *United*

*States v. California Care Corp.*, 709 F.2d 1241 (9th Cir. 1983), in deciding whether to require

exhaustion. *See Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at \*4 (E.D.

Mich. Aug. 29, 2025). Under that test, a court may require exhaustion when

> (1) agency expertise makes agency consideration necessary to generate a proper
> record and reach a proper decision;
> (2) relaxation of the requirement would encourage the deliberate bypass of the
> administrative scheme; and
> (3) administrative review is likely to allow the agency to correct its own mistakes
> and to preclude the need for judicial review.

*Id.* (citation omitted); *see also California Care Corp.*, 709 F.2d at 1248. The Court need not

require exhaustion where pursuing administrative remedies "would be a futile gesture." *Shearson*,

725 F.3d at 594 (quoting *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1093 (6th Cir. 1981)).

Here, the Court must determine whether Alonso is detained under § 1225 or § 1226, a legal

question that does not require agency consideration. *Pizarro Reyes*, 2025 WL 2609425, at \*3

(citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024)). Second, a timely appeal

likely would not have changed Alonso's outcome given that the BIA cannot review constitutional

challenges. *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006); *see also Lopez-Campos*, 2025

WL 2496379, at \*4 (determining that appeal to the BIA for a due process claim was "likely futile");

*Shearson*, 725 F.3d at 594. Because the BIA concluded that immigration judges lack authority to

hear bond determinations in cases like Alonso's, waiving exhaustion requirements would not

encourage the deliberate bypass of administrative review. *In re Yajure Hurtado*, 29 I&N Dec. at

228; *California Care Corp.*, 709 F.2d at 1248. Third, because Respondents have clearly indicated

their position that § 1225 authorizes Alonso's detention, administrative review is unlikely to

change their position such that judicial review would be unnecessary. *See Lopez-Campos*, 2025

WL 2496379, at \*4; *California Care Corp.*, 709 F.2d at 1248. Accordingly, the Court will waive

exhaustion and consider Alonso's petition.

## C.    Immigration and Nationality Act

Alonso claims that he is unlawfully detained in violation of the Immigration and Nationality Act, 8 U.S.C. §§ 1225–1226.  Specifically, he argues that "[t]he mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility." (D.N. 1, PageID.14 ¶ 54)  According to Alonso, "[m]andatory detention does not apply to those who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings by Respondents." (*Id.*)  He thus contends that he is detained under § 1226(a) and is eligible for release on bond. (*Id.*)  Respondents maintain that Alonso is lawfully detained under § 1225(b)(2) as an applicant for admission. (D.N. 8, PageID.37–38; D.N. 15, PageID.78–80)

Section 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing."  The statute states:

> An alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission.
>
> . . . .
>
> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.[7]

---

[7] Subparagraph B states that § 1225(b)(2)(A) does not apply to noncitizen crewmen, the inspection of noncitizens arriving in the United States and certain other noncitizens not admitted or paroled, or stowaways.  § 1225(b)(2)(B).  Subparagraph C states that "[i]n the case of an alien described in subparagraph (A) who is arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States, the Attorney General may return the alien to that territory pending a proceeding under section 1229a of this title."  § 1225(b)(2)(C).

8 U.S.C. § 1225(a)(1), (b)(2)(A).  An "[a]rriving alien means an applicant for admission coming

or attempting to come into the United States . . . regardless of the means of transport."  8 C.F.R.

§ 1.2.  "Admission" and "admitted" mean "the lawful entry of the alien into the United States after

inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13)(A).  Noncitizens

subject to mandatory detention under § 1225(b)(2) may be released only if they are "paroled 'for

urgent humanitarian reasons or significant public benefit.'"  *Gomes v. Hyde*, No. 1:25-cv-11571-

JEK, 2025 WL 1869299, at *2 (D. Mass. July 7, 2025) (quoting 8 U.S.C. § 1182(d)(5)(A)); *see*

*also Hyppolite v. Noem*, No. 25-CV-4304 (NRM), 2025 WL 2829511, at *7 (E.D.N.Y. Oct. 6,

2025) (describing mandatory detention under § 1225).

> Section 1226, titled "Apprehension and detention of aliens," provides:

>> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.  Except as provided in subsection (c) and pending such decision, the Attorney General—
>>> (1) may continue to detain the arrested alien; and
>>> (2) may release the alien on—
>>>> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>>>> (B) conditional parole . . . .[8]

8 U.S.C. § 1226(a).  Section 1226 thus provides a "discretionary detention framework" for

noncitizens arrested and detained on a warrant issued by the Attorney General.  *Gomes*, 2025

WL 1869299, at *2.  It "authorizes the [g]overnment to detain certain aliens already in the country

pending the outcome of removal proceedings."  *Jennings*, 583 U.S. at 289.  The arresting

immigration officer makes an initial custody determination.  *See Gomes*, 2025 WL 1869299, at *2

(citing 8 C.F.R. § 1236.1(c)(8)).  The noncitizen then "ha[s] the right to request a custody

---

[8] Subsection (c) applies to "[d]etention of criminal aliens," which, as the Court will explain, informs its analysis but is otherwise not relevant here.  § 1226(c).

redetermination (i.e., bond) hearing before an Immigration Judge." *Id.* (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)). "Bond may be denied only if the government 'either (1) prove[s] by clear and convincing evidence that [the noncitizen] poses a danger to the community or (2) prove[s] by a preponderance of the evidence that [the noncitizen] poses a flight risk.'" *Id.* (alterations in original) (quoting *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021)). Section 1226(a)(2)(B) also permits release "on an Order of Recognizance, which is a form of conditional parole." *Id.* (citations omitted). In sum, § 1226(a)'s "discretionary authority" requires "an individualized bond determination before a noncitizen may be taken into custody." *Hyppolite*, 2025 WL 2829511, at *8 (citation omitted).

Because sections 1225(b)(2)(A) and 1226(a) "have notably different mandates as to whether a noncitizen must be provided with any individualized determination prior to being taken into custody, the question of which provision [Alonso] falls under is central to the resolution of his petition." *Id.* at *7. Alonso is an "alien present in the United States who has not been admitted." § 1225(a)(1). He is thus an "applicant for admission" for purposes of the Immigration and Nationality Act. *Id.* But it is not immediately clear whether he is "seeking admission" under § 1225(b)(2)(A), given that he has been in the United States for more than a decade. Moreover, Alonso has been "arrested and detained pending a decision on whether [he] is to be removed from the United States." § 1226(a). The Court must therefore engage in statutory interpretation to determine which statute applies to Alonso's situation. *See Pizarro Reyes*, 2025 WL 2609425, at *5.

When the Court interprets a statute, "the inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (internal quotation marks and citation omitted). "If the statutory language is plain, [the

Court] must enforce it according to its terms." *King v. Burwell*, 576 U.S. 473, 486 (2015) (citing

*Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010)). In "deciding whether the

language is plain, [the Court] must read the words in their context and with a view to their place

in the overall statutory scheme." *Id.* (internal quotation marks and citation omitted). "[E]very

clause and word . . . should have meaning." *United States, ex rel. Polansky v. Exec. Health Res.,*

*Inc.*, 599 U.S. 419, 432 (2023) (internal quotation marks and citation omitted). Other "tools

available for the resolution of a doubt about the meaning of a statute" include the statute's title and

section headings. *Dubin v. United States*, 599 U.S. 110, 120–21 (2023) (internal quotation marks

and citation omitted). "[A] title is especially valuable [where] it reinforces what the text's nouns

and verbs independently suggest." *Id.* at 121 (second alteration in original) (quoting *Yates v.*

*United States*, 574 U.S. 528, 552 (2015) (Alito, J., concurring)).

Section 1225's title refers to "arriving aliens," which "strongly indicates that the statute

governs the *entrance* of noncitizens to the United States." *Pizarro Reyes*, 2025 WL 2609425, at

*5. This reference reinforces the text of § 1225. For example, "[t]he statute . . . explicitly

addresses its effect on 'stowaways' and 'crewm[e]n,' words that suggest arrival at a border or port

of entry." *Id.* (second alteration in original); 8 U.S.C. § 1225(a)(2)–(3); *see also* 8 U.S.C.

§ 1101(a)(10), (a)(49) (defining these terms). Moreover, § 1225(b)(2)(A) permits inspection of

"applicant[s] for admission" who are "*seeking* admission" if they are not "clearly and beyond a

doubt entitled to be admitted" (emphasis added). The phrase "seeking admission," though not

defined in the statute, "implies action—something that is currently occurring, and in this instance,

would most logically occur at the border upon inspection." *Lopez-Campos*, 2025 WL 2496379, at

*6. And not all applicants for admission are automatically seeking admission. For example, a

petitioner like Alonso may be an applicant for admission because he did not lawfully enter the

country following inspection and authorization by an immigration officer.  8 U.S.C. §§ 1225(a)(1), 1101(a)(13)(A).  But it does not follow that he is "seeking" admission given that he has been in the United States for more than a decade.  *See Lopez Benitez v. Francis*, No. 25 Civ. 5937 (DEH), 2025 WL 2371588, at *6 (S.D.N.Y. Aug. 13, 2025); *Lopez-Campos*, 2025 WL 2496379, at *6.

"Whereas § 1225 governs removal proceedings for 'arriving aliens,' § 1226(a) serves as a catchall."  *Pizarro Reyes*, 2025 WL 2609425, at *5 (quoting § 1225).  "[Section] 1226 applies to aliens already present in the United States[, and §] 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings."  *Jennings*, 583 U.S. at 303 (considering whether §§ 1225(b), 1226(a), and 1226(c) require providing noncitizens detained under those provisions periodic bond hearings).  The "idea that a different detention scheme would apply to non-citizens 'already in the country,'" as compared to noncitizens "'seeking admission into the country,'" is "consonant with the core logic of [the nation's] immigration system."  *Martinez v. Hyde*, No. 25-11613-BEM, 2025 WL 2084238, at *8 (D. Mass. July 24, 2025) (quoting *Jennings*, 583 U.S. at 289).  Thus, it is "particularly doubtful that Congress intended section 1225(b)(2)(A) to apply to non-citizens, like [Alonso], detained while present in the United States."  *Id.* (internal citation and quotation marks omitted).

The recent amendment to § 1226 further supports this interpretation.  "When Congress acts to amend a statute, [courts] presume it intends its amendment to have real and substantial effect." *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995).  As relevant here, the amendment, codified in § 1226(c)(1)(E), applies to noncitizens who are inadmissible under 8 U.S.C. § 1182(a)(6)(A) and who have been charged with, arrested for, or convicted of "burglary, theft, larceny, shoplifting, or

12

assault of a law enforcement officer . . . , or any crime that results in death or serious bodily injury

to another person." § 1226(c)(1)(E)(ii).  As one court has noted,

> [c]onsidering that § 1182(a)(6)(A)(i) specifically refers to aliens "present in the
> United States without being admitted or paroled," and that § 1226(c)(1)(E) requires
> detention without bond of these individuals if they have also committed a felony,
> the recently created statutory exception would be redundant if § 1225(b)(2)
> authorized their detention as well.  That is, because an alien present in the United
> States without admittance would be unlikely to prove that they are "clearly and
> beyond a doubt entitled to be admitted," ICE would never need to rely on
> § 1226(c)(1)(E) to detain them.

*Pizarro Reyes*, 2025 WL 2609425, at \*5 (citation modified); *see also United States v. Taylor*, 596

U.S. 845, 857 (2022) ("[Courts] do not lightly assume Congress adopts two separate clauses in the

same law to perform the same work." (citation omitted)).  Employing similar reasoning, multiple

courts within the Sixth Circuit and beyond have rejected the argument that § 1225(b)(2) applies to

noncitizens arrested on a warrant while residing in the United States.[9]  *See, e.g.*, *Pizarro Reyes*,

2025 WL 2609425, at \*5; *Lopez-Campos*, 2025 WL 2496379, at \*8; *Gomes*, 2025 WL 1869299,

at \*6–7.

Respondents cite three cases that they claim have "rejected Petitioner's proposed

interpretation of [§ 1225(b)(2)]."  (D.N. 8, PageID.38)  Only one is factually comparable to this

matter.  In *Chavez v. Noem*, No. 3:25-cv-02325-CAB-SBC, 2025 WL 2730228 (S.D. Cal. Sep. 24,

2025), the court found that noncitizens detained by ICE for being present in the United States

without having been admitted or paroled were subject to § 1225's mandatory-detention provision.

*See* 2025 WL 2730228 at \*1, \*4–5.  The court noted that applicants for admission under § 1225

include "[a]n alien present in the United States who has not been admitted."  *Id.* at \*4 (alteration

---

[9] Respondents' argument that the amendment is not redundant appears to focus on why
§ 1226(c)(1) generally is not redundant rather than § 1226(c)(1)(E), which specifically addresses
noncitizens who are inadmissible as not having been admitted.  (*See* D.N. 15, PageID.80)

in original) (quoting § 1225(a)(1)).  It determined that § 1225 applied to the petitioners and did not

"contradict or render superfluous § 1226" because the latter "'generally governs the process of

arresting and detaining' certain aliens, namely 'aliens who were inadmissible at the time of entry

or who have been convicted of certain criminal offenses since admission.'"  *Id.* at *5 (emphasis

removed) (quoting *Jennings*, 583 U.S. at 288).  But although this analysis addresses whether

§ 1226 is superfluous, it does not explain why § 1225, and not § 1226, is *applicable* to petitioners

who have long been present in the United States.  *See id.* at *4–5.  The Court thus does not find it

instructive.

The other two cases Respondents cite—*Vargas Lopez v. Trump*, No. 8:25CV526, 2025

WL 2780351 (D. Neb. Sep. 30, 2025), and *Pena v. Hyde*, No. 25-11983-NMG, 2025 WL 2108913

(D. Mass. July 28, 2025)—are distinguishable.  In *Vargas Lopez*, the government did not produce

an arrest warrant, which makes § 1226 inapplicable as to release on bond.  *See* 2025 WL 2780351

at *7; *see also* § 1226(a).  Here, the government provided an arrest warrant to detain Alonso.  (*See*

D.N. 8-1, PageID.46)  And *Pena* did not address § 1226 but rather a "writ[] of habeas corpus . . .

where the alien petitioner was the beneficiary of an approved I-130 petition" involving an

adjustment of status, so the court determined that he was an applicant for admission and lawfully

detained under § 1225(b)(2)(A).  *See* 2025 WL 2108913 at *1–2.  As to § 1225(b)(2)(A),

moreover, the court did not address whether the noncitizen—who entered the United States

illegally in 2005—was also "seeking admission" under that provision.  *See id.* at *1 (summarizing

detention under § 1225 as involving "any alien who 1) is 'an applicant for admission' to the

country and 2) is 'not clearly and beyond [a] doubt entitled to be admitted'" (quoting

§ 1225(b)(2)(A))).

Respondents also maintain that Alonso is lawfully detained under § 1225(b)(2) because all unadmitted citizens are applicants for admission, and Alonso is seeking admission. (*See* D.N. 15, PageID.78 n.2; D.N. 8, PageID.38)  But although Alonso is an "applicant for admission" within the meaning of § 1225(a)(1), the Court disagrees that he is also "seeking admission," as that statute requires, *see* § 1225(b)(2)(A).  Alonso has lived in the United States for more than a decade and has never sought any legal immigration status. (D.N. 1, PageID.4 ¶ 19)  It thus is unlikely that he seeks admission. *See Pizarro Reyes*, 2025 WL 2609425, at *5 (concluding that a noncitizen who had "lived in the United States for twenty years, never sought admission, and was not arrested when attempting to cross the border or pass through a port of entry illegally" was detained under § 1226 and not § 1225); *Lopez Benitez*, 2025 WL 2371588, at *9 ("[T]he Court need not reach the outer limits of the scope of the phrase 'seeking admission' in § 1225(b)—it is sufficient here to conclude that it does not reach someone who has been residing in this country for more than [eleven] years, and that as someone already in the country, [Alonso] may be subject to detention only as a matter of discretion under § 1226(a)." (citation modified)).

Citing *In re Yajure Hurtado*, Respondents contend that an applicant for admission and a person seeking admission are "one and the same." (D.N. 15, PageID.79 n.3)  The Court is not bound by an agency's statutory interpretation, however, and instead must exercise its independent judgment. *Loper Bright*, 603 U.S. at 412.  The Court must also give effect to all words in a statute. *Polansky*, 599 U.S. at 432.  As explained above, a noncitizen present in the United States may be an applicant for admission without seeking admission.

Respondents also misplace their reliance on *Jennings*.  (*See* D.N. 15, PageID.78)  Respondents focus on the statement in *Jennings* that applicants for admission "fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." (*Id.*, PageID.79

15

(quoting 583 U.S. at 287))  As explained, *Jennings* involved whether noncitizens who were subject

to detention under § 1225(b), § 1226(a), or § 1226(c) were entitled to periodic bond hearings.  *See*

583 U.S. at 286, 289.  Therefore, *Jennings* does not answer whether Alonso is subject to § 1225.

Finally, Respondents argue that Alonso's arrest warrant "does not indicate [that] he is

detained under" § 1226.  (D.N. 15, PageID.81; *see also* D.N. 8-1, PageID.46)  The warrant was

directed to immigration officers "authorized pursuant to sections 236 and 287 of the Immigration

and Nationality Act . . . to serve warrants of arrest for immigration violations."  (D.N. 8-1,

PageID.46)  Section 236 of the Act is codified at 8 U.S.C. § 1226.  *Barrera v. Tindall*, No. 3:25-

cv-541-RGJ, 2025 WL 2690565, at *1 n.1 (W.D. Ky. Sep. 19, 2025).  Respondents nevertheless

contend that Alonso was arrested under § 1225(b)(2)(A).  (D.N. 8, PageID.36)  But "[a]n agency

must defend its actions based on the reasons it gave when it acted."  *Dep't of Homeland Sec. v.*

*Regents of the Univ. of California*, 591 U.S. 1, 24 (2020).  Therefore, the Court "will not credit

this post-hoc justification."  *Barrera*, 2025 WL 2690565, at *4.  Instead, consistent with the

analysis above, the Court concludes that Alonso is detained under § 1226 and is entitled to a bond

hearing.[10]

**D.     Due Process**

Alonso additionally argues that his detention violates due process under the Fifth

Amendment because "Respondents have not demonstrated that [he] needs to be detained."

(D.N. 1, PageID.15 ¶ 58)  Respondents contend that there was no due process violation because

---

[10] In light of this conclusion, Alonso's request that Respondents be enjoined from moving him
outside this district (*see* D.N. 1, PageID.16) will be denied as moot.  *See Hyppolite*, 2025
WL 2829511, at *16 ("Since Respondents now cannot detain [Alonso] without first conducting a
hearing before an [immigration judge], they cannot, by definition, remove him from the [d]istrict
without first giving him and his counsel notice and an opportunity to be heard as to his detention.").

Alonso's rights do not "overcome the [g]overnment's interests in maintaining his detention through his removal proceedings." (D.N. 8, PageID.40)

"Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." *Plyler v. Doe*, 457 U.S. 202, 210 (1982) (citations omitted). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citation omitted). To determine whether civil detention violates due process, the Court applies the three-part balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Barrera*, 2025 WL 2690565, at *6. Under that test,

> [t]he Court must weigh: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (citing *Mathews*, 424 U.S. at 335).

All three *Mathews* factors support granting Alonso a hearing. First, it is "undisputed [that Alonso] has a significant private interest in not being detained." *Id.* Second, "the risk of erroneously depriving him of his freedom is high if the [immigration judge] fails to assess his risk of flight and dangerousness." *Lopez-Campos*, 2025 WL 2496379, at *9; *see also* 8 C.F.R. § 1236.1(c)(8), (d)(1). Third, a "routine bond hearing before an [immigration judge]" presents "minimal" fiscal and administrative burdens, and "there is an established process for doing so that [the Department of Homeland Security] can readily follow here." *Hyppolite*, 2025 WL 2829511, at *15. The Court thus concludes that detaining Alonso without providing him a bond hearing violates due process. *Orellana v. Noem*, No. 4:25-cv-112-RGJ, 2025 WL 3006763, at *6 (W.D.

17

Ky. Oct. 27, 2025); *Barrera*, 2025 WL 2690565, at *7; *Lopez-Campos*, 2025 WL 2496379, at *9–

10.

**III.**

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is

hereby

**ORDERED** as follows:

(1)     The Clerk of Court is **DIRECTED** to correct the spelling of Petitioner's last name

to "Alonso" in the record of this matter.

(2)     Alonso's petition for a writ of habeas corpus (D.N. 1) is **GRANTED**.   The

United States is **DIRECTED** to release Alonso from custody and provide him with a

bond hearing before a neutral Immigration Judge pursuant to 8 U.S.C. § 1226(a).  The United

States **SHALL** certify compliance with the Court's Order by a filing on the docket no later than

November 7, 2025.

November 4, 2025

David J. Hale, Judge
United States District Court